UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ALOYISUS MESHELL,                                    Case No. 2:19-cv-01063-AC

                           Plaintiff,                OPINION AND ORDER

            v.

HEIDI STEWARD, JAMIE BREYMAN,
JOAN BARTON,

                           Defendants.
_____

ACOSTA, Magistrate Judge:

*Introduction*

        Plaintiff Aloyisus Meshell ("Meshell"), a prisoner of the State of Oregon housed at the

Eastern Oregon Correctional Institute ("EOCI") appearing *pro se*, filed this action under 42 U.S.C.

§ 1983 ("Section 1983") against a number of employees of the Oregon Department of Corrections

("Department") alleging the employees violated his rights under the First, Eighth, and Fourteenth

Amendments.  Currently before the court is a motion for summary judgment filed by defendants

Heidi Steward, Assistant Director of the Department; Jamie Breyman, Administrator of the

PAGE 1 - OPINION AND ORDER

Department's Office of Population Management; and Joan Barton, Department classification manager (collectively "Defendants"), based on the absence of a constitutional violation and qualified immunity.

The court finds Mitchell failed to adequately support his claims alleging violations of his rights under the First, Eighth, and Fourteenth Amendments and, alternatively, Defendants are entitled to qualified immunity on these claims. Accordingly, Defendants' motion for summary judgment is granted and Meshell's complaint dismissed with prejudice.[1]

*Preliminary Procedural Matter*

On July 29, 2020, the day after Defendants filed their motion for summary judgment, the court issued and mailed to Meshell a Summary Judgment Advice Notice and Scheduling Order ("SJ Notice"). The SJ Notice advised Meshell:

> The defendants have made a motion for summary judgment (Motion for Summary Judgment [36]) by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine dispute of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine dispute of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

---

[1] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

PAGE 2 - OPINION AND ORDER

(Summ. J. Advice Notice and Scheduling Order, ECF No. 40.)  The SJ Notice directed Meshell to file his opposition to Defendants' motion for summary judgment within thirty days of the SJ Notice, or on or before August 29, 2020.

On September 3, 2020, the court granted Meshell's motion for extension of time and ordered Meshell to file his response to Defendants' motion for summary judgment on or before November 2, 2020.  (ECF No. 44).  Meshell failed to file a response, and Defendants' unopposed motion for summary judgment went under advisement on November 16, 2020.

The only material Meshell offers in support of his claims is the content of his July 8, 2019 complaint ("Complaint").  The court may not consider the Complaint when ruling on Defendants' summary judgment motion, however, because the Complaint is unverified:  it does not contain a sworn statement declaring, under penalty of perjury, the allegations are true and correct in accordance with 28 U.S.C. § 1746.  Because of this omission, the court cannot treat the Complaint as an affidavit opposing Defendants' summary judgment motion.  *See Lew v. Kona Hosp.,* 754 F.2d 1420, 1423 (9th Cir.1985) (a verified complaint may be used as an opposing affidavit under Rule 56 to the extent it expresses personal knowledge of admissible facts but an unverified complaint is insufficient to counter a summary judgment motion supported by affidavits). Accordingly, the following facts are based primarily on Defendants' evidence and the court considers them undisputed.

*Background*

Meshell alleges Defendants violated his constitutional rights from March 2018 through June 27, 2019, when they falsely labelled him a sex offender and which prevented him from being housed at an unfenced minimum custody institution, specifically Mill Creek Correctional Facility

("Mill Creek").  (Compl. ECF No. 2, at 4-8.)  Meshell claims Defendants retaliated against him for complaining about the improper label, in violation of his First Amendment rights; imposed the improper label based on Meshell's status as a Native American, in violation of his equal protection rights; deprived him of a protected interest, in violation of his due process rights under the Fourteenth Amendment; and violated his Eighth Amendment rights against cruel and unusual punishment by placing the improper label on him.  (Compl. at 6-8.)  Meshell asserts Defendants were fully aware he was never charged with, or convicted of, a sexual offense at the time they labelled him a sex offender.  (Compl. at 8.)

Department regulations provide procedures for "identifying and assigning an appropriate custody level to each inmate committed or transferred to the Department of Corrections and housed in a Department of Corrections operated or contracted facility.  OR. ADMIN. R. 291-104-0106(2)(a) (2020).  To this end, the Department uses "designators" which are defined as "[i]nformation, alerts or statutory designations important for sentence computation and crucial to determining work crew eligibility, unfenced housing assignment, and the management of inmates and offenders both in institutions and the community."  OR. ADMIN. R. 291-104-0111(11) (2020).  The SXEL designator is "used to document AICs[2] with felony and/or misdemeanor convictions (juvenile or adult) for non-sex crimes that include a sexual element for exclusion from community work assignments and unfenced housing placements" but "is not a sex offender designation (which is an 'SXOF' designator)."  (Barton Decl. dated July 29, 2020, ECF No. 37, ¶¶ 8, 13.)  An SXEL designator does not affect an AIC's overall classification or release date but does make an AIC ineligible to live at Mill Creek or any other unfenced minimum custody institution.  (Barton Decl. ¶¶ 4, 6, 7.)

---

[2] AIC stands for Adult in Custody.  (Barton Decl. ¶ 3.)

Defendants' evidence establishes that although Meshell was never charged with, or convicted of, a sexual offense, one of Meshell's victim's "reported that he sodomized her at the time of the Assault IV for which he was convicted." (Barton Decl. ¶ 11, Ex. 3.) As a result of this report, the Department assigned an SXEL designation to Meshell to indicate "it is likely that there was a sexual element to the crime for which he was convicted." (Barton Decl. ¶¶ 11, 12.) However, "even if Mr. Meshell did not have the SXEL designator, he would still not be eligible for unfenced housing because he has a Behavior/Criminal concerns designatory due to the number of victims he has and his number of assaults he had committed." (Barton Decl. ¶ 14.)

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2019). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

PAGE 5 - OPINION AND ORDER

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2019). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

I.  First Amendment Violation

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives to the corrections system." *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2010). Included among those rights guaranteed by the First Amendment is the right "to petition the government for redress of grievances without retaliation." *Id.* To succeed on a claim for First Amendment retaliation, a plaintiff must prove: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took an adverse action against the plaintiff; (3) a causal connection exists between the plaintiff's conduct and the defendant's adverse action; (4) the "official's acts would chill or silence a person of ordinary firmness from

PAGE 6 - OPINION AND ORDER

future First Amendment activities[;]" and (5) the defendant's retaliatory action did not advance the legitimate penological goals of the correctional institution.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  "Mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

The evidence before the court establishes Defendants placed an SXEL designation on Meshell because the victim of the Assault VI charge reported Meshell sodomized her during the assault.  There is no evidence of a causal connection between Meshell's alleged protected activity of pursuing grievances "to remedy the false allegation of being charged and convicted of a sex offense" and Defendants' placement of the SXEL designation.  (Compl. at 6.)  Furthermore, the SXEL designation was necessarily in place before Meshell initiated grievance proceedings to challenge the SXEL designation.  Consequently, the SXEL designation could not have been a retaliatory response to Meshell's protected activity.  Finally, the regulations make clear that designating appropriate custody levels for each inmate advances the legitimate penological goals of the Department to provide the proper amount of supervision; the safe, secure, and orderly operation of Department facilities; and reasonable protections for the general community, staff, and inmate population.  OR. ADMIN. R. 291-104-0106(3)(a) (2020).

Meshell fails to provide evidence Defendants' act of giving him an SXEL designation was in retaliation for Meshell's seeking redress for the designation or were unrelated to a valid penological interest.  Defendants are entitled to summary judgment on Meshell's First Amendment retaliation claim.

II.  Eight Amendment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. CONST. amend VIII.  "The Constitution 'does not mandate comfortable prisons,' but neither does

PAGE 7 - OPINION AND ORDER

it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted).  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.  A prison official violates the Eighth Amendment when two requirements are met.  *Id.* at 834.  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Id.* (quoting *Wilson*, 501 U.S. at 297).

Meshell contends the SXEL designation "labeled [him] as a sex offender [which] can bring a high risk of assaults, life threatening situations [and] different treatment – non access to phone, dayroom, confined to cell" and that as a result of the designation, he "suffered anxiety, sleep deprivation, feeling of fear and psychological trauma . . . couldn't eat and feared at all time he would be assaulted."  (Compl. at 7.)  While Meshell alleges he fears his SXEL designation may cause other inmates to harm him, he has offered no evidence he ever was in actual danger or that any specific threats have been made against him because of his designation; consequently, he has filed to establish a substantial risk of serious harm.  Moreover, the possible loss of phone or dayroom access is not a sufficiently serious deprivation to support an Eighth Amendment claim. *See Barno v. Ryan*, 399 Fed. Appx. 272, 273 (9th Cir. 2010) ("The district court properly dismissed Barno's deliberate indifference claim because Barno failed to allege that he suffered any injury or threat of harm other than the allegedly erroneous classification itself, possible loss of a prison job, and temporary restrictions on visitations with minors.").  Defendants are entitled to summary judgment on Meshell's Eighth Amendment claim as well.

PAGE 8 - OPINION AND ORDER

III.  Fourteenth Amendment Claims

   *A.  Due Process*

   Meshell alleges Defendants "falsely accused" him of, and "punished" him for, a sexual offense without due process in violation of the Fourteenth Amendment.  (Compl. at 8.)  Liberty interests which entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner,* 515 U.S. 472, 484 (1995) (internal citations omitted).

   When deciding whether the Constitution protects an alleged liberty interest of a prisoner, the court should consider whether the practice in question "is within the normal limits or range of custody which the conviction has authorized the state to impose."  *Meachum v. Fano,* 427 U.S. 215, 225 (1976).  Only a hardship that is sufficiently significant will require due process protections.  *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir.2003), *cert. denied,* 541 U.S. 1063 (2004).  Three factors to consider are:  (1) the conditions of confinement; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the sanction will affect the duration of the prisoner's sentence.  *Id.* at 861; *Keenan v. Hall,* 83 F.3d 1083, 1088–89 (9th Cir.1996).

   In general, prison inmates do not have a protected liberty interest in freedom from alleged classification errors where such errors do not cause the inmates to be subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  The same principle applies to claimed due process violations arising from alleged falsification of prison documents. *See Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (discussing *Sandin*, 515 U.S. at 487 n.11).  Moreover, changes in conditions relating to

PAGE 9 - OPINION AND ORDER

classification and reclassification do not implicate the Due Process Clause itself. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)) (no constitutional right to particular classification).

Here, plaintiff alleges the stigma of his SXEL designation created the possibility of repercussions from other inmates, but stigma alone is insufficient to implicate a liberty interest. *Am. Civil Liberties Union v. Masto*, 670 F.3d 1046, 1058 (9th Cir. 2012). Meshell's claim the SXEL designation prevents him from being housed at an unfenced institution "where he could obtain a job, attend education programs, be nearer to his family, and participate in institutional programing" also does not implicate a constitutionally protected liberty interest. (Compl. at 9.) Prisoners have no constitutional right to incarceration in a particular institution. *See Meacham*, 427 U.S. at 225-26 (no constitutional right to be housed in a particular prison within a state).

Meshall has not shown his alleged false designation amounts to an atypical or significant hardship beyond the ordinary incidents of prison life. Consequently, he has failed to establish Defendants deprived him of a constitutionally protected right which is fatal to his due process claim under the Fourteenth Amendment.

### B. Equal Protection

The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To bring a successful equal protection claim, a plaintiff must show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). For this differential treatment to give rise to a claim under 42 U.S.C. § 1983, "one must show intentional or purposeful discrimination." *Draper v. Rhay*, 315 F.2d 193, 198

(9th Cir. 1963) (inmate failed to show Section 1983 violation in absence of "intentional or purposeful discrimination").

Meshell claims Defendants imposed the SXEL designation because he is a Native American. First, the evidence establishes the SXEL designator is based on a report by a victim, not Meshell's status as a Native American. Second, Meshell fails to offer evidence Defendants treated similarly situated individuals of a different race differently or that Defendants intentionally or purposefully discriminated against Meshell due to his race. Meshell fails to present sufficient evidence in support of his claim Defendants violated his constitutional right to equal protection under the Fourteenth Amendment.

IV.  Qualified Immunity

Defendants alternatively argue they are entitled to qualified immunity with respect to Meshell's claims. The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, public officials are generally immune from civil liability unless their actions violated clearly established law because "a reasonably competent public official should know the law governing his conduct." *Id.* "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent of those who knowingly violated the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation and internal quotations omitted). The key inquiry in determining whether an officer has qualified immunity is whether he or she has "fair warning" that the conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).

PAGE 11 - OPINION AND ORDER

To determine whether the doctrine of qualified immunity applies to individual defendants, the court must decide whether a plaintiff has shown a constitutional or statutory right has been violated and whether the right at issue was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223 236 (2009).

The clearly established inquiry "must be undertaken in the light of the specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.  Officials may be held liable only for violation of a right the "contours [of which are] sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right."  *Id*. at 202.  Therefore, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Id*.  To be clearly established, the law need not be a "precise formulation of the standard" where "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand."  *Id*.

Meshell has failed to show Defendants violated his First Amendment rights by retaliating against him for pursuing his grievances, subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, or deprived him of a protected liberty interest or treated him differently because of his race, in violation of the Fourteenth Amendment.  Consequently, the court need not consider whether Defendants are entitled to qualified immunity.  However, assuming a constitutional violation occurred, the court finds the constitutional rights at issue were not clearly established at the time of the conduct and Defendants could not reasonably have known their

conduct would result in constitutional violations.    Accordingly, Defendants are, alternatively, entitled to qualified immunity.

*Conclusion*

Defendants' motion (ECF No. 36) is granted and Meshell's complaint is dismissed with prejudice.

DATED this 30th day of March, 2021.

JOHN V. ACOSTA
United States Magistrate Judge

PAGE 13 - OPINION AND ORDER